UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOSEPH S. SINGLETARY,

                            Plaintiff,              11-CV-6055

                                                    **DECISION**
                    v.                              **and ORDER**

MICHAEL J. ASTRUE, Commissioner
of Social Security

                         Defendant.
_____

### INTRODUCTION

Plaintiff, Joseph S. Singletary ("Plaintiff"), brings this action pursuant to Title XVI of the Social Security Act ("the Act") seeking reversal of a final decision of the Commissioner of Social Security ("Commissioner") finding that he was not entitled to Supplemental Security Income ("SSI") benefits. Specifically, Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") James Dombeck denying him benefits was not supported by substantial evidence in the record and was in conflict with principles of *res judicata* and collateral estoppel.

The Plaintiff moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure and 42 U.S.C. 405(g) seeking to reverse the Commissioner's decision or, in the alternative, remand this case to the Commissioner for reconsideration of the evidence. The Commissioner cross-moves for

-Page 1-

judgment on the pleadings pursuant to 42 U.S.C. 405(g) on the grounds that the findings of fact of the Commissioner are supported by substantial evidence. This Court finds that the ALJ's decision is supported by substantial evidence in the record and is in accordance with the applicable legal standards. Therefore, for the reasons set forth below, the Commissioner's motion for judgment on the pleadings is granted, and the Plaintiff's motion is denied. Plaintiff's complaint is dismissed with prejudice.

## PROCEDURAL HISTORY

Plaintiff first protectively filed for SSI on May 2, 1991, under Title XVI of the Act, alleging disability due to a gunshot injury sustained to his right arm on March 15, 1991. Transcript of the Administrative Proceedings at 128, 577-19 (hereinafter "Tr."). Plaintiff's application was denied at the initial and reconsideration levels. The Plaintiff was eventually granted a hearing before an ALJ, and appeared before Judge Stanley A. Moskal, Jr. with attorney, Paul Kelly, on July 20, 1992. Administrative Addendum Exhibit A (hereinafter "Admin. Add.").

In a Decision dated September 10, 1992, ALJ Moskal determined that Plaintiff had been disabled through the date of the decision. In his decision, ALJ Moskal acknowledged that Plaintiff did not meet the criteria under listing 1.13 of the regulations. Admin. Add. Exhibit A. He found Plaintiff to be disabled on the grounds

that the medical treatment planned would be "the equivalent of a series of staged surgical procedures" and was therefore suffering from an impairment "equivalent" to 1.13. 20 C.F.R. 416.920(d). Admin. Add. Exhibit A. he recommended the file be reviewed in one year.

In August of 1996, Plaintiff was incarcerated and his benefits were suspended pursuant to section 1611(e)(1)(A) of the Act. Tr. 33, 383. His entitlement was then terminated in November of 1996 pursuant to section 1631(j)(1) which requires the termination of eligibility for SSI benefits after a claimant is ineligible for 12 consecutive months. There is no evidence, nor does Plaintiff assert, that he appealed the termination of his benefits. Tr. 33. Plaintiff was incarcerated from July 1996 through October 2002. Tr. 383, 574, 579-88.

Upon his release from prison, Plaintiff re-applied for SSI on November 25, 2002 claiming disability since May 2, 1991. On May 2, 2003 Plaintiff's application was initially denied, and he again requested a hearing before an ALJ. A hearing was held on June 14, 2005 in Rochester, New York, before ALJ Karen Peters by video-conference. In a decision dated August 15, 2005, ALJ Peters determined that Plaintiff was no longer disabled under the regulations. Tr. 28-35. In her decision, ALJ Peters determined that because the Plaintiff's benefits had been terminated and a new application had been filed, the new application was to be treated

as a new claim and reviewed *de novo*. Tr. 33-34. Plaintiff appealed ALJ Peter's decision, and the Appeals Council ("AC") denied Plaintiff's request for review. Tr. 4-6.

Plaintiff then appealed to the Federal District Court for the Western District of New York and was assigned to Judge Charles Siragusa. By  Decision and Order date January 22, 2008, Judge Siragusa remanded Plaintiff's case back to the Commissioner for determination of the issue whether the November 2002 application was subject to *res judicata, thus* making the September 1992 decision determinative. Tr. 409-17. On February 19, 2008, the Appeals Council vacated the August 5, 2005 hearing decision by ALJ Peters and remanded the case to an ALJ for further proceedings in accordance with the fourth sentence of Section 405(g) of the Act. Tr. 404-05. A hearing was held before ALJ James Dombeck on June 4, 2008. Plaintiff appeared and testified with counsel Dennis J. Annechino, an associate of Plaintiff's former attorney Mr. Kelly.

In a decision dated March 4, 2009, ALJ Dombeck decided *res judicata* was not applicable in this case and a *de novo* determination of Plaintiff's potential disability was required. Tr. 380-404. ALJ Dombeck determined that Plaintiff was not disabled as defined by the listings and was capable of performing activities within the "light" exertional range. Tr. 380-404. The Appeals Council denied Plaintiff's request for review on December 4, 2010,

making ALJ Dombeck's decision the final decision of the Commissioner. This action followed.

## DISCUSSION

### I. <u>Jurisdiction and Scope of Review</u>

42 U.S.C. § 405(g) grants jurisdiction to Federal District Courts to hear claims based on the denial of Social Security benefits. <u>Matthews v. Eldridge</u>, 424 U.S. 319, 320 (1976). Additionally, the section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. <u>See</u> <u>Bubnis v. Apfel</u>, 150 F.3d 177, 181 (2d Cir. 1998); <u>see also</u> <u>Williams v. Comm'r of Soc. Sec.</u>, No. 06-2019-cv, 2007 U.S. App. LEXIS 9396, at *3 (2d Cir. Apr. 24, 2007).

Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938). Section 405(g) thus limits this Court's scope of review to two inquiries: 1) whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole, and (2) whether the Commissioner's conclusions are based upon an erroneous legal standard. <u>Green-Younger v. Barnhard</u>, 335 F.3d 99, 105-06 (2d Cir. 2003); <u>see</u> <u>also</u> <u>Wagner v. Secretary of Health &</u>

Human Serv., 906 F.2d 856, 860 (2d Cir. 1990)(holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

The Commissioner asserts that the ALJ's decision is supported by substantial evidence in the record and is in accordance with the applicable legal standards, and moves for judgment on the pleadings pursuant to Rule 12(c).   Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988).  If, after reviewing the record, the Court is convinced that Plaintiff has not set forth a plausible claim for relief, judgment on the pleadings may be appropriate. See generally Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

## II.  Standard for Entitlement to SSI Benefits

Under the Social Security Act, a disability is defined as the "inability to engage in substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months..." 42 U.S.C. §1382c(a) (3). An individual will only be considered "under a disability" if his impairment is so severe that he is both unable to do his previous work and unable to engage in any other kind of

substantial gainful work that exists in the national economy. 42 U.S.C. §1382c(a)(3)(b).

"Substantial gainful work" is defined as "work that exists in significant numbers either in the region where the individual lives or in several regions of the country." Id. Work may be considered "substantial" even if it is done on a part-time basis, if less money is earned, or if work responsibilities are lessened from previous employment. 20 C.F.R. § 416.972(a). Work may be considered "gainful" if it is the kind of work usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §416.972(b). Furthermore, "substantial gainful work" is considered available to an individual regardless of whether such work exists in his immediate area, whether a specific job vacancy exists for him, or whether he would be hired if he were to apply for work. 42 U.S.C. §1382c(a)(3)(B).

In determining whether or not a claimant is disabled, SSA regulations require the ALJ to perform a five-step sequential evaluation. In doing so, the ALJ must determine:

(1) Whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has a severe impairment which significantly limits his physical or mental ability to do basic work activities;

(3) if the claimant suffers a severe impairment, the ALJ considers whether the claimant has an impairment which is listed in Appendix 1, Subpart P, Regulation No. 4, if so, the claimant is presumed disabled;

-Page 7-

(4)  if not, the ALJ considers whether the impairment prevents the claimant from doing past relevant work;

(5)  if the claimant's impairments prevent her from doing past relevant work, if other work exists in significant numbers in the national economy that accommodate the claimant's residual functional capacity and vocational factors, the claimant is not disabled.

20 C.F.R. §416.920(a)(4)(i)-(v)(2009).

In the instant case, after determining that the Plaintiff met the insured status requirements of the Social Security Act under sections 216(i) and 223, the ALJ performed the required five-step evaluation and determined that: (i) Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of November 25, 2002; (ii) Plaintiff's status post gunshot injury to the right upper extremity (1991) with residual nerve palsy of the right hand was a "severe" impairment under 20 C.F.R. § 416.921 *et seq*; (iii) Plaintiff's impairments did not meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§416.925 and 406.926); (iv) Plaintiff had essentially complete inability to use the right hand and arm for grasping, manipulation, lifting, carrying, pushing or pulling but maintained normal use of th left upper extremity for all fine and gross work-related functions; and (v) Plaintiff retained the residual functional capacity ("RFC") to perform light work.

III.     **The Commissioner's decision to deny the Plaintiff benefits was legally correct and supported by substantial evidence in the record**.

    A. Background

Plaintiff was born on December 5, 1967 in Rochester, where he has maintained a permanent residence in the family home. Tr. 301, 562. Plaintiff testified that he was residing in California with his girlfriend at the time of the hearing before ALJ Dombeck. Tr. 561-62, 574. Plaintiff was unemployed and had been since before the incident in 1991 which prompted his initial application for SSI. He testified that the last time he was working was in 1989. Tr. 561-62. Records obtained from the Rochester City School District show that Plaintiff withdrew from school in January of 1985 at the age of 17. Tr. 481. Plaintiff testified that he recalled dropping out of school around the tenth grade but he was unable to recall with certainty. Tr. 563. Plaintiff further testified that he was completely illiterate. Tr. 563-64. The school records show that Plaintiff had been classified as "learning disabled" and placed in non-graded special classes for academic subjects. Tr. 498-503. A psychological evaluation in 1982, when Plaintiff was 14, indicated scores in the average range for non-verbal skills and in the borderline retarded range for verbal skills. A Wide Range Achievement Test was given at the same time, indicating a reading level of a 3.3 grade equivalent. Tr. 498. However, the record also revealed Plaintiff's absenteeism and truancy which contributed to his inability to learn to read and

write. Tr. 388, 480-498, 576. The record does not contain any evidence that Plaintiff required or received any treatment during his adolescent or adult life for any mental disorder.  Tr. 389.

Claimant testified that his only work experience was that of a butcher in a slaughterhouse, doing roofing and siding, and as a stock boy in a warehouse. Tr. 565-67. His most recent employment was at the slaughterhouse in 1989 and required extensive use of both of his arms. Tr. 566. ALJ Dombeck conceded Plaintiff's previous jobs all required the use of both hands and both arms. Tr. 566-67.

In his hearing on June 14, 2005 before ALJ Peters, Plaintiff testified that he was convicted of two crimes, but denied having committed either crime.  The first was for assault on a police officer, for which he was incarcerated from 1995-1996. Tr. 322, 390. He testified that the second conviction arose from a "domestic dispute" during which he stabbed his girlfriend in the back. The stabbing took place in the back seat of a car, through the driver's seat, with the weapon in Plaintiff's non-dominant hand. Tr. 317-22, 580. He was incarcerated again for this assault from 1996 until October of 2002. Tr. 317-22, 580, 595. ALJ Peters noted, in response to his admission of this stabbing, that his ability to stab a person through the seat of a car with his non-dominant hand provided some evidence of his strength and functional capabilities, even as a one-armed man. Tr. 321 (also noted by ALJ Dombeck on page 390).

At his hearing before ALJ Dombeck on June 4, 2008, Plaintiff was uninsured and had no income. Tr. 573. Plaintiff testified that he was denied public assistance in New York State because of his pending SSI claim. Tr. 573-74. He testified that he was living off the assistance provided by his family members and girlfriend. Tr. 574.

B. <u>Medical Evidence</u>

Plaintiff filed his first application for SSI at the age of 22 claiming disability as a result of a 12-gauge shotgun wound to his right arm. The incident occurred on March 15, 1991, less than 2 months before Plaintiff filed for SSI benefits. Plaintiff was admitted to the Emergency Department ("ED") of Rochester General Hospital ("RGH") on March 15, 1991 and remained until April 2, 1991, during which he was treated for a "gunshot wound to the right humerus with grade III, comminuted, open fracture of the right humerus, and right radial nerve injury." Tr. 128. The attending physician was Dr. Stephen Kates. During his admission four surgeries were performed for irrigation and debridement of the wound, the application and adjustment of external fracture fixation, a split thickness skin graft and repair of the right radial nerve. Tr. 129-33. He was released in stable condition with a prescription for Tylenol and instructions to care for the wound, including the arrangement of a Visiting Nurse for the two weeks following his discharge for dressing changes at home. Tr. 130.

In May of 1991, a month after Plaintiff was discharged, he was admitted to the ED of RGH for removal of the external fixator. Dr. Rusotti was Plaintiff's attending physician responsible for his care and treatment. Tr. 143-44. From April 1991 through May of 1992, Plaintiff returned to the ED twice for recurrent pin/tract wound infections with Staph Aureus and for sightings of "pus" discharge from the site of skin graft. Tr. 143. The wound infection was treated with Keflex, an antibiotic, and resolved. Tr. 144.

As noted by ALJ Dombeck, the current record contains no further medical documentation for the years June 1992-1999. ALJ Moskal's September 10, 1992 decision references medical history indicating complete loss of ulnar nerve function and no use of fingers, reduced bicep strength and difficulty to the right arm and hand when pressure was applied. Tr. 389, Admin. App. Exhibit A. As a result of Plaintiff's incomplete recovery from the injury as of the date of ALJ Moskal's decision, as well as a brief report from a treating physician stating that Plaintiff was scheduled for further reconstructive surgery, ALJ Moskal found the claimant's right arm injury "equaled" the criteria of then-existing section 1.13 of the Listing of Impairments in Appendix 1. However, as ALJ Dombeck notes, "there is no medical evidence, and essentially no allegation, that the [Plaintiff] ever underwent any additional surgery." Tr. 390. Furthermore, by Plaintiff's own admission, there

was no further course of treatment possible to remedy his arm. Tr. 334, 573.

The record contains medical records from the Department of Corrections ("DOCS") chronicling Plaintiff's medical issues while incarcerated. Ambulatory health records list a series of complaints unrelated to Plaintiff's gunshot wound, including gastrointestinal discomfort, frequent gas, bloating, abdominal pain, GERD-like symptoms and occasional constipation. Tr. 174-239.

The DOCS records also contained medical evidence relating to the gunshot wound. On June 21, 1999, Plaintiff was seen at the Bare Hills Correctional Facility Clinic ("the Clinic") complaining of "lots of pain in neck and shoulder" which he reported had been going on "for months". Tr. 554. He returned on July 6 and 19, 1999 with the same complaint on both occasions, first requesting muscle relaxants and then alleging that medication seemed to make it worse. Tr. 554. He denied any new injury. Over the next ten to eleven months Plaintiff returned to the Clinic repeatedly with complaints of neck and arm pain, but examinations revealed nothing more than right upper extremity deformity. Tr. 509-53. Plaintiff was even reported to have a full range of motion in his neck and right shoulder with mild discomfort in February of 2000. Tr. 544, 509-53. Plaintiff was prescribed Naprosyn, Robaxin, Tylenol, and Motrin for the pain. Tr. 509-53.

Although the Plaintiff was seen frequently at the clinic from April 2000 through December 2000, there was little mention of neck, shoulder or arm pain in the clinic's records. Tr. 528-44.

In January of 2001, Plaintiff's complaints of pain in his right arm resumed. He was examined and found to have scarring and shortening of the right arm from the gunshot wound, with complaints of increased stiffness and aching as well as locking of the right elbow. Tr. 525.

Plaintiff was referred for physical therapy and went to an outpatient facility on February 26, 2001. Tr. 202. This evaluation detailed a shortened right arm, loss of bicep/tricep tissue and scarring from the gunshot wound. Tr. 201-03. Plaintiff denied the presentation of pain at the exam. The physical therapist noted a poor rehabilitation potential as a result of the residual structural deficits of Plaintiff's right arm and neck. Tr. 202-03. After performing a strength examination on Plaintiff's cervical spine, the physical therapist reported a full range of motion and 5/5 strength in all planes. The physical therapist reported a 4+/5 overall gross strength in the right shoulder, elbow, wrist and hand. Plaintiff was approved for three weekly therapy sessions to teach him an exercise program to increase flexibility in his right upper extremity, cervical spine and upper torso. Tr. 203. Upon his return to the Correctional Facility he reportedly had no questions or problems. Tr. 523.

-Page 14-

After Plaintiff reapplied for SSI benefits in November of 2002, he was seen by consultative physician Dr. Ramon Medalle. Tr. 151-54. Plaintiff reported that he is able to cook to a certain extent, to clean to a limited extent, to do laundry, to shop for food and clothing and to care for his children. Tr. 152. He also reported that he reads in his spare time, contrary to prior testimony that he was illiterate. Tr. 152. Dr. Medalle's examination revealed full flexion, extension, lateral flexion and full bilateral rotary movement of the cervical spine and lumbar spine. Tr. 153. Plaintiff's SLR, however, was negative bilaterally. The examination also revealed full ROM of shoulders, elbows and forearms bilaterally and of left wrist. Right wrist, however, was incapable of moving and was in 30 degree flexion. Tr. 153. Plaintiff's right arm also displayed obvious loss of muscle at the posterolateral part of the distal part of the right arm and appeared to be two inches sorter than the left arm. He exhibited a strength of 5/5 in all upper extremities but a 0/5 grip strength of the right hand. Tr. 153. Plaintiff could not move second through fourth fingers of his right hand.

Dr. Medalle opined that "claimant is markedly limited in performing any fine motor movements with the right hand because of loss of function due to nerve damage." Tr. 154. He further opined that Plaintiff was "moderately limited in activities requiring forceful use of the right upper extremity because of loss of muscle and nerve damage to the right upper extremity". Tr. 154.

Since his release from prison, through 2005, Plaintiff had visited RGH on several occasions with complaints unrelated to his right arm, including a laceration to the finger, chest pain, back pain, and a car accident. Tr. 269-76, 157-59, 155-73, 251-62.

At the time of the hearing before ALJ Dombeck in June 2008, approximately six years had passed since Plaintiff had seen a doctor because he did not have health insurance. Tr. 564. ALJ Dombeck correctly found that from 1992 until the time of his decision, there is no evidence that Plaintiff's arm required continued surgical intervention.

 C. The ALJ properly concluded that the 1992 disability determination is not determinative of Plaintiff's disability status with respect to his November 2002 <u>application</u>.

Plaintiff argues that ALJ Moskal's original September 1992 decision finding him to be disabled is determinative with regard to the current SSI Claim under the doctrines of *res judicata* and collateral estoppel.

The issue of whether or not *res judicata* or collateral estoppel applies to the 1992 disability determination was initially addressed by this Court in Judge Siragusa's January 22, 2008 Decision and Order remanding this case to the Commissioner for consideration of that issue.  In that Decision and Order, after reviewing case law suggesting that in some circumstances, a prior determination of disability could preclude a subsequent finding that a claimant was not disabled, Judge Siragusa instructed the

-Page 16-

Commissioner to specifically address whether or not the 1992 disability determination in this case precluded ALJ Peters from finding that the Plaintiff was not disabled in her August 15, 2005 decision denying Plaintiff's application for benefits. See January 22, 2008 Decision and Order at p. 9 ("This action is remanded . . . .to the Commissioner to reassess the application of *res judicata* . . . .") Judge Dombeck, in his March 4, 2009 decision, found that Plaintiff's benefits were properly terminated, that neither *res judicata* nor collateral estoppel were applicable to the Plaintiff's 1992 disability determination, and that Plaintiff had failed to establish that he is disabled under the regulations. For the reasons set forth below, I affirm the ALJ's findings.

1.  Plaintiff's benefits were properly terminated pursuant to the Social Security Regulations.

Although Plaintiff contends that his benefits were improperly terminated, as Judge Dombeck explained in his benefits determination, with respect to Supplemental Security Income Benefits, pursuant to the regulations, such benefits are suspended upon the incarceration of a beneficiary, and terminated in cases where the beneficiary is incarcerated for a period of more than 12 consecutive months. 42 U.S.C. §1611(e)(1)(A); 42 U.S.C. §1383(j)(1). When benefits are terminated because of the incarceration of the recipient, the individual must reapply for benefits under section 1611 and meet the requirements for disability under the section. 42 U.S.C. §1383(j)(1). Based on

these regulations, I find that Plaintiff's benefits were rightfully terminated, and that his recourse was to submit a new application for benefits, which he did, in November 2002.

2.    Plaintiff's prior disability determination does not have preclusive effect on his subsequent application for benefits

In cases such as this, where benefits have been terminated and the recipient has made a new application for benefits, the recipient must prove that he or she is disabled, without regard to the prior determination that he or she was disabled.   As ALJ Dombeck stated in his decision, the Act provides that the disability determination will be:

> made on the basis of the weight of the evidence and on a neutral basis with regard to the individual's condition, without any initial inference as to the presence or absence of disability being drawn from the fact that the individual has previously been determined to be disabled.

Tr. 385; 42 U.S.C. §1382c(a)(4)(C).   Accordingly, pursuant to the Social Security Act, Plaintiff's new application for benefits is not subject to findings made in prior determinations.

Plaintiff argues, however, that even if *res judicata* does not apply, he must still be found disabled because his condition has not improved since he was found to be disabled by ALJ Moskal in 1992.   While it is true that typically, once disability has been granted to a claimant, the regulations require that there be a "medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related

-Page 18-

to the individual's ability to work)" in order for benefits to be terminated 42 U.S.C. §1382c(a)(4), as stated above, that provision does not apply here, where Plaintiff's benefits were properly suspended, and then terminated, because of Plaintiff's incarceration.  Rather, because Plaintiff was required to file a new application for benefits, and because the regulations require that the new application be evaluated without regard to the prior finding of disability, lack of medical improvement is inapposite to the determination of whether or not the Plaintiff is disabled as of the date of the new application for benefits.

Moreover, even if the issue of lack of medical improvement could be considered with respect to Plaintiff's new application for benefits, the evidence in the record of lack of improvement would not support a finding that the Plaintiff is disabled.  This is so because Plaintiff's initial disability determination was not based on the loss of function of his right arm, but instead was based on ALJ Moskal's finding that Plaintiff suffered from a soft tissue injury, the recovery from which would be expected to take more than one year.  Specifically, ALJ Moskal considered whether or not Plaintiff met the criteria for a soft tissue injury, as set forth in Section 1.13 of the Social Security Disability Listings.  At the time of ALJ Moskal's determination, Section 1.13 provided that a soft tissue injury to an upper extremity would be considered disabling where the injury required "a series of staged surgical procedures within 12 months after onset for salvage and/or

restoration of major function of the extremity, and such major function was not restored or expected to be restored within 12 months after onset."[1]   While ALJ Moskal found that Plaintiff's condition did not "meet the strict criteria of section 1.13", he nevertheless found that Plaintiff's condition was equivalent to the listing's articulation of a "series of staged surgical procedures", and therefore Plaintiff was disabled "at least through the date of [his September 10, 1992] decision." Indeed, ALJ Moskal recommended that the Plaintiff's file be reviewed in one year's time--after the Plaintiff had undergone his course of rehabilitation--at which time the functional capacity of his right arm could be evaluated. Because ALJ Moskal found that the Plaintiff was disabled on the basis of a soft-tissue injury that would require further surgery and rehabilitation that was likely to last longer than one year, and not because of the loss of use of his right arm, evidence that Plaintiff's arm function did not improve is not relevant to the initial finding of disability, and is not probative of whether the initial disability finding remains valid.

Finally, Plaintiff's claim that he was found disabled based on the loss of function in his right arm is not only contradicted by the record, which clearly indicates that he was found disabled in

---

[1] Amendments to the Regulations, effective 2/19/01 (66 FR 58032, Nov. 19, 2001), preserved the general content and substance of section 1.13 of Appendix 1 as it pertained to soft tissue injuries to an extremity, and placed it in re-designated section 1.08 of Appendix 1.

1992 based on the fact that he was expected to undergo an intensive rehabilitation period expected to last longer than one year, but is also rebutted by the fact, as noted by ALJ Dombeck, that "even the complete loss of function or amputation of a single upper extremity is not sufficient medical basis under the Listings to result in a finding of disability." Tr. 394. 20 C.F.R. Pt. 404, Subpt. P, App. 1.    Indeed, the regulations recognize that a "one-armed" individual without further course for treatment, could have the ability to perform substantial gainful activity. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Section 100C (current section 100N).    In both his testimony before ALJ Peters as well as his testimony before ALJ Dombeck, Plaintiff admitted there was no further course of treatment for him, and doctors have told him there is nothing more to be done. Tr. 334, 573. This testimony is reiterated in Plaintiff's brief that no further treatment has been presented to the Plaintiff or can be done in the future for him. Plaintiff's Brief, at 2, 7, 8. Plaintiff has not been to see a doctor for an infection or problem with his wound-site for the past 17 years since May of 1992. Tr. 112-14. Although pain in his upper arm persisted throughout his time in prison, nothing more than pain management could be done for him. Tr. 175-239. There is no evidence Plaintiff did not undergo any of the anticipated additional surgeries which formed the basis for ALJ Moskal's decision.

ALJ Dombeck properly considered the very basis of ALJ Moskal's decision and his expressed recommendation to reconsider the case

after the year of surgeries was completed pursuant to Section 1.13. ALJ Dombeck's decision that *res judicata* did not apply to this case was supported by the applicable law and SSA regulations. Therefore, this Court finds that ALJ Moskal's 1992 decision is not determinative of the current application, and ALJ Dombeck is correct in reviewing this case *de novo*.

D.   The ALJ Properly determined that Plaintiff is not Disabled.

ALJ Dombeck found that the Plaintiff had a severe impairment in the right upper extremity and residual nerve palsy of the right hand. Tr. 396. He next found that even with this impairment, Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments.

After considering all the relevant evidence in the record, ALJ Dombeck found that while Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent they were inconsistent with the residual functional capacity assessment ("RFC").

ALJ Dombeck concluded that Plaintiff had the residual functional capacity for light work, with the added limitation that Plaintiff has a complete inability to use his right hand and arm for grasping, manipulation, lifting, carrying, pushing, or pulling. Tr. 398. ALJ Dombeck concluded that the Plaintiff is able to sit,

stand, walk, climb stairs and bend without significant limitation. Tr. 398.

ALJ Dombeck found that Plaintiff's testimony that he has suffered from constant and severe pain as a result of the 1991 gunshot to his right arm is not supported by the record. Medical reports from The Department of Corrections show periodic reports of pain in his arm and even report Plaintiff's self-described pain as "intermittent." Tr. 174-239. Since his release from prison in 2002, the record indicates Plaintiff has infrequently sought medical attention at RGH for his right arm pain. For the six years leading up to the hearing before ALJ Dombeck, Plaintiff had not seen a doctor at all. Tr. 564.

Claimant also reported total paralysis in his right arm. However, when further questioned, he admitted to being able to move his shoulder and elbow and raise his arm to wash and to steady objects. He reported he was capable of performing everyday tasks with minimal use of his right arm, including driving with his left arm. Tr. 151-54. He otherwise testified he was incapable of using his right arm to complete everyday tasks. The record contains no evidence suggesting Plaintiff ever attempted to develop left-hand dominant functioning.

This Court finds that ALJ Dombeck's credibility determination is supported by substantial evidence in the record.

ALJ Dombeck's RFC indicated that Plaintiff was capable of performing work in the "light" exertional category with the added

limitation that Plaintiff has a complete inability to use his right hand and arm for grasping, manipulation, lifting, carrying, pushing, or pulling. Tr. 398. ALJ Dombeck concluded that the Plaintiff is able to sit, stand, walk, climb stairs and bend without significant limitation.  He also presumptively considered Plaintiff as illiterate.

ALJ Dombeck relied upon consultative physician Dr. Ramon Medalle's evaluation of Plaintiff's abilities in forming his RFC. According to the regulations, it is the responsibility of the claimant to furnish medical and other evidence "that can be used to reach conclusions about a medical impairment(s). If material to the determination whether you are disabled, medical and other evidence must be furnished about the effects of your impairment(s) on your ability to work." 20 C.F.R. § 416.912(a). Such evidence includes medical opinions or professional findings, laboratory tests and statements from others regarding a claimant's impairment or abilities. 20 C.F.R. § 416.912(a)(1)-(8). When the evidence as a whole is insufficient to support a determination or decision on a claim, such as when additional evidence needed is not contained in the records of your medical sources, the Commissioner has the right to order a consultative examination at the expense of the Social Security Administration. 20 C.F.R. § 416.919a.

Plaintiff failed to provide medical records identifying a treating physician or any doctor he saw within six years of the hearing before ALJ Dombeck. None of the medical records he provided

spoke to his abilities or functioning. Without this evidence, ALJ Dombeck was correct in relying upon Dr. Medalle's evaluation in formulating his RFC.

After examining the Plaintiff in March of 2003, Dr. Medalle found that Plaintiff was "markedly limited in performing any fine motor movements with the right hand" and was "moderately limited in activities requiring forceful use of the right upper extremity because of loss of muscle and nerve damage to the right upper extremity." Tr. 154. He reported Plaintiff's prognosis to be "stable." Tr. 154.

ALJ Dombeck's RFC is supported by the evidence contained in the record.

ALJ Dombeck presented the Vocational Expert ("VE") Peter A. Manzi with the following hypothetical factors: a younger individual (less than 45 years of age); who completed 9 years of school, but who is unable to read or write; with a vocational background the same as that of the Plaintiff; who had total inability to use the upper right extremity from the shoulder to the fingers; who retains full use of his left extremity. Tr. 402, 603-19. The VE testified that based on that hypothetical, such an individual would not be able to perform the past jobs of the Plaintiff, but would be capable of performing jobs such as a table worker (DOT 739.682-182). This job is sedentary in nature and involves inspection of flooring, such as tiles, for defects. The VE testified there are

14,713 table worker jobs in the national economy and 50 jobs in the Finger Lakes region. Tr. 403, 604-19.

ALJ Dombeck concluded by specifying that the Act does not take hireability into consideration past the impact of the impairment on a claimant's ability to work. Plaintiff's past criminal history and the effect that may have on potential employers willingness to hire him had no bearing on the administrative proceedings. Tr. 403.

Therefore, this court finds that ALJ Dombeck's determination that Plaintiff is capable of performing work and is not disabled is supported by substantial evidence in the record.

## CONCLUSION

For the reasons set forth above, this Court finds that the Commissioner's decision to deny the Claimant benefits was supported by substantial evidence in the record. Therefore, I grant the Commissioner's motion for judgment on the pleadings, and deny Plaintiff's motion for judgment on the pleadings. The Plaintiff's motion is dismissed with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:      August 3, 2012
            Rochester, New York